All right, Mr. Demarest, we'll hear from you first. Good morning, Your Honors. May it please the Court? We believe that the District Court erred in ruling that the license agreement unambiguously permitted Choice Hotels to allow a hotel using one of its 21 other brands to open on the lot adjacent to our client's country unit suites hotel. We believe that a careful analysis of the license agreement establishes that this was not permitted by the agreement. At the very least, the agreement was ambiguous and the District Court erred in granting a permission to dismiss under 12b-6. Also, with regard to the tortious interference and good faith and fair dealing claims, the District Court didn't even analyze those claims. Once it reached the conclusion that there had been no breach of contract, it just stopped its analysis. We would ask the Court to reverse on all three of those counts. I think this boils down to, at least in part, the expectations of the franchisee and what was the benefit of the bargain. We have to look at the context in which this arose. When our client entered into an agreement, there was one brand, country unit suites. Carlson then sold those brands to Radisson, additional brands were added, and Radisson sold to Choice so that the hotel in question is now part of a franchise system that incorporates 22 different hotels. They are on the same reservation system, the same 1-800 number, the same rewards program. In fact, the hotel that is on the adjacent lot is competing with our client's I think there are two points that I would point out that I think specifically indicate the District Court's error. On page 10 of the opinion, the District Court says, in other words, the agreement requires systems, a defined term, and marks to be read narrowly to protect T&T only from other licenses to use the country unit suites brand. Why would the agreement be interpreted narrowly in favor of the franchisor? This is an agreement between two parties. How about the notwithstanding clause? I bet you know what I am talking to, 1.2b. It says, despite any grant of exclusivity, the country and its affiliates have the right anywhere and any time to operate and license other hotels using other marks. It has got to work a wood spring mark on it. You talk about the expectation. Why wouldn't that be enough to decide this case? Two points, Your Honor. One is if you look at it, the other systems and marks there are not capitalized. They are not the defined terms. More importantly, the District Court never looked at the next section, which is section 1.2c. What that essentially says, it carves out any hotels that are owned by the franchisor, which is section 1.2b.3. It says, country will not allow any hotels using the marks with capitalized M, defined term, other than those referenced in section 12b.3, which is franchisor-owned hotels, to open within the protected area until after the expiration or termination of the protected term. This disagreement is incredibly vague. We have sections 1.2a, b, and c. Section 1.2a says, you got this protected territory, which is a tremendous location on I-95 in Florida at the Daytona Beach exit. Then 1.2b says, notwithstanding the protected territory we just gave you, the franchisor and the District Court read sections 1.2b, 1, 2, and 3 of completely taking away the protected area and making it meaningless. Section 1.2c then restores it. It's like the left hand gives, the right hand takes away, the left hand gives it again. And 1.2c has the big M marks. Correct. So if the big M marks are only the protected marks plus any other logos or some kind of identifiers for country in and suites, then what Choice did was permissible under the contract. Is that correct? I don't think so, Your Honor, because if you read the definition of marks, which is on page 30 of the license agreement. So if I can just interrupt. So your disagreement with what I just said is that I've not defined marks properly? You have not looked, you've not considered the entirety of the definition of marks in the agreement. Okay. If that's, if my statement is an accurate description of big M marks, then they were permissible. It was permissible to have that Wood Springs Hotel there. If the term marks does not include, as the agreement does, the definition of system or system hotels. Yeah, if it only includes country in and suites, then that's dispositive. If the agreement only pertains to country in and suites, then it would be. I'm sorry, if the marks only pertain, then that would be dispositive. Okay, but your argument then is, dives into. Right. So then you look at the definition of marks and it talks about by which the system and system hotels are identified. So the key from our perspective is, what's a system? So if Choice had chosen to buy this and operate country in and suites as a stand-alone business, as it had been with Carlson back in 2011, we wouldn't have an argument. When Choice decided, and so they bought these brands and then they incorporated into their system. And I've listed out several things. So the same website for reservations, same 800 numbers, same reward system choice privileges applies to all the brands. Franchisees are required to participate in a marketing fund. The marketing fund is used to promote all the brands, not just country in and suites. There's a choice privileges master card, which can be used for all the hotels. And the franchisee is required to use whatever marketing materials Choice provides, which promotes not only country in and suites, but all of the brands. So I think that if you look at the agreement as a whole, and I think the proper interpretation requires the court to consider all of the provisions to read them together. I don't think the district court did that. It's at the very least ambiguous, if not clearly in our favor that once Choice incorporated this hotel into their system, that it became the not just country in hotels, but all hotels that are part of that system. The item that you just listed, credit cards and rewards points, that's not in the agreement. Is that in your complaint? This is a motion to dismiss, so we don't have any discovery. Is that in the record? Certainly the reservation system and the 1-800 number and the rewards are, yes. So I think where the district court erred was... You seem to be defining system to include any hotel that's affiliated with Choice. Is that what you're saying? The word system is also defined in the agreement. System and system hotels. You seem to be using a different meaning of system. I don't think so, Your Honor, because a system under the agreement is any hotel that used the marks. That takes you back to what is the marks, which is the primary marks and other things by which the system is identified. Right. So the primary marks are country in, country in suites, et cetera. But the agreement defines marks to include any marks by which system and system hotels are identified. The agreement defines system to include all the hotels that are part of the system. It is somewhat circular, I acknowledge. It just refers you back to the marks. Right. But where does it ever go beyond country in, country suites, and so forth? I think where that comes in, Your Honor, is the system and system hotel. Is, you know, any hotel that's using any of the marks. And there's now an integration of country in and suites along with the other hotels. I'm sure that if this agreement were being drafted in contemplation with a 22 brand franchise system that it would have been drafted differently. Choice is the second successor franchisor. And I think it's also a question of this is a contract. And the question is what are the expectations, the reasonable expectations of the parties to the contract? The expectation of the franchisee was they were part of a franchise system that at that time was one brand. And that they wouldn't have a competitor of their own system on the next lot. When it ultimately ended up that Choice became the franchisor with 22 brands and they put a hotel right next door in the protected territory that's using, you know, the reservation system using, and the agreement does talk about, you know, you must use the reservation system. You must report information. So it's not, our client can't separate itself from the Choice system. It's, it was imposed on them as a result of two successive sales to larger companies. So if you look at what's, what was the benefit of the bargain that the franchisee was looking for? That it would participate in a franchise system where there was, there were common, there was a common name, common standards, and people would know what they would expect. But particularly with reservations, which is critical to hotels, they would be part of the system where if someone went to the Country Inn & Suites website and looked for a hotel in Port Orange, Florida or Daytona, they would get one result, Country Inn & Suites Port Orange. Now they get 15 with that same search on the Choice system. And so the benefit of the bargain to the franchisee is not being met if the agreement is interpreted in such a way that they're required to participate in the Choice reservation system. They're competing against other Choice hotels without their consent. And Choice did not have to incorporate them into the system. It could have been a stand-alone brand. They chose that it was to Choice's advantage to create and incorporate this hotel into the system. I had intended to reserve five minutes for a bottle. I've got about two minutes. Unless the Court has questions, I'm going to leave that last two minutes. Thank you. Thank you. Mr. Miller, we'll hear from you. May it please the Court. My name is Craig Miller, and I'm here on behalf of the appellees. I want to jump into the heart of the argument, which is that the license agreement clearly and unambiguously gives Choice the right to put a Woodspring Suites in the protected area. But before I do that, I just want to step back and give a 30,000-foot level of this case for the panel. In the franchise context, it's important to remember that intuitively licenses are connected to a specific brand or a specific franchise system. In other words, a franchiseor grants a specific license to a franchisee or a licensee to own and operate a specific brand or a specific hotel in a franchise brand. It doesn't license to a franchisee or a licensee a portfolio of brands or a bunch of different franchise systems. Although a franchiseor like Choice might own multiple brands, in this case 22 different brands, each of those brands is a different and separate franchise system. Each brand or franchise system has its own trademarks, its own trade names, its own trade dress, its own logos, its own signs, its own marketing materials, and its own visual identifiers. Choice does not, as T&T seems to contend, operate its 22 separate brands as a single franchise system. That's nonsensical. Each brand in and of itself is its own system, its own franchise system. But you have the same reservation system and all that stuff, right? A hundred percent, Judge. You're right. From a cost efficiency standpoint and savings standpoint, you're right. A franchiseor like Choice might have a universal reservation system, might have a universal 1-800 number. You could agree not to have any other hotels from your broader system in an area. It just depends what the agreement is. That's correct, Your Honor. Absolutely. I don't understand the point of the 30,000-foot summary. It depends on this particular agreement. It does. You're correct. But the whole point of that is to say that a franchiseor doesn't license to a franchisee all 22 separate brands or franchise systems. It could, yeah. Not in the franchise context, you don't see that, right? You might have a separate agreement, you're right, Your Honor, for each of those licenses, but you're not going to have one agreement that's going to license a right to operate all 22 separate brands. It's just nonsensical. It doesn't exist. That's not the issue here. He's not claiming they got a license to operate all 22. He's just saying they had a deal that you couldn't open the wood bridge. What he's saying, though, is the term system refers back to all 22 branded hotels in the portfolio. Well, it depends how system is defined in this agreement, which says what? The marks. Correct. And the marks is clearly by, if you take the marks mean, the marks means the country and suites brand, the country and suites marks and all the visual identifiers associated with the country and suites brand. Well, those are the primary mark. The primary mark, the primary, I'm sorry, Your Honor, let me interrupt. The primary mark are the country and suites logos and trademark, right? So it's the, marks is consistent, consists of the primary marks, which are specifically the country and suites trademarks, plus all the visual identifiers that go along with the country and suites brand. That's the other trademarks, that's the signage, that's the service marks, that's the logos, that's the trade dress, that's both the interior and exterior of the hotel. All of that compiles what's called the marks because those are all associated. So you mean capital M marks, right? Capital M marks. Not small marks, right? That's correct, Your Honor. That's your whole argument, is it? Other marks means something different from capital M marks, right? That's correct. Capital M marks means the country and suites marks. Capital S system means the country and suites system. When we're talking about smaller M marks and smaller S system, we're referring to something outside of the country and suites brand. We're referring to any sort of the hotels that aren't specifically a part of the country and suites brand. So that's the importance of Section 1.2b2, which specifically allows choice and anybody that is licensed by them to use the system and marks, small s, small m, in the protected area, right? And that's important because that provision specifically and clearly states that the parties contemplated something like this happening where choice, a franchisor, purchases the country and suites brand, which it did, but preserves the right contractually under 1.2b2 to place within the protected area other choice brands that aren't specifically a country and suites brand. That's the whole point and purpose of 1.2b2. And so from my perspective, from choice's perspective, that's it. That's exactly what's going on here, right? They have the right to put a Wood Springs Suites Hotel within the protected area based upon 1.2b2. And then if you go on and if you look at 1.2c, that specifically talks about what T&T or the appellant's expectations are. Now, appellant's counsel says we've been denied a benefit of the bargain and our expectations have been denied. That's not the case at all because the expectations are tied specifically to the terms of the license agreement. And the license agreement specifically allows choice to place a non-country and suites branded hotel within the protected area. And it can do so even if it has an adverse impact on the appellant's hotel. That's what 1.2c says. At the very end, it says even though they have an adverse impact on T&T's hotel. So that's the expectation. That's the benefit of the bargain that T&T was granted or allowed. And you're not taking away the benefit of the bargain or taking away any expectation by following the terms of the clear terms of the license agreement including what's set forth in 1.2c. What's your understanding then of the first sentence of 1.2c? Country will not allow any hotels using the marks other than those referenced in Section 1.2b.3 to open within the protected area. Okay? So marks as we know means the country in and suites marks. It's a capital M so we go back to what's the definition of marks. So basically this is what this is saying is country won't allow any other country in and suites hotels to be opened within the protected area unless and until there's an expiration or termination of the appellant's hotel or license agreement. Doesn't the 1.2b.3 mean that if Choice itself puts a hotel next to them, they can? Yes. Isn't that what 1.2b.3 is? Yes. So they could put a Choice hotel right next to them, right? They could as long as it fits within the... They completely own it and they completely run it. Isn't that what... Well, is that right or is 1.2b.3 limited to affiliates? Countries... Related entities.  Would that be people other than Choice then? That would be my understanding. Country's affiliates, so it's Choice's affiliates, would be allowed to have the right anywhere and anytime to own or operate a hotel using the system and the marks, the country in and suites system and the country in and suites marks. Right next to them. Right next to them. Yes, but that's not what the case is here, right? We're talking about we license them, Choice licensed to Wood Spring Suites, or excuse me, to Sunshine to open and operate a Wood Spring Suites hotel because Wood Spring Suites is a different system and it has different marks than the country in and suites system and marks. What do you do with the reservation system definition? That now, at least now, there are a number of other types of hotels that are pulled into the same reservation system, right? Correct. And they talk about system hotels. Well, now there are a number of hotels that are going through the same reservation system. But reservation system and system hotels are two separate thoughts, Your Honor, right? Right, except that reservation system refers to the system for accepting and transmitting system reservations to system hotels. Correct. And system hotels in that scenario is, again, the country in and suites system hotels. You've got the country in and suites system. That's the franchise system. And system hotels are the hotels that operate as a country in and suites hotel. That's what system hotel means. And so simply because, Your Honor, they may have a reservation system that allows for, that has 22 separate branded hotels associated with it, does not, in my opinion or my belief, have any impact on the argument at all. It's just two separate issues. And I guess I would point out to you, Your Honor, that to the extent that Pelham's Counsel is relying on facts that are outside of the Third Amendment complaint or that aren't in the record at all, those should be just not considered by the Court on this motion to dismiss. It's only allowed to consider the facts that are part of the underlying record, none of which of that is. So in any event, I think it's pretty clear from the record that, from the language, that there is no ambiguity here, that the plain language of the license agreement gives this Court the right to determine, as a matter of law, that Choice has the right to place a Wood Springs Suite and Hotel in the protected area. And because of that, there can be no breach of contract claim. That should be dismissed as a matter of law. Secondly, because there's no breach of contract claim, there can be no breach of the implied covenant of good faith and fair dealing, because under Florida law, such a claim cannot stand on its own and can only be applied if there is a breach of contract. Here, there's no breach of contract, so the breach of the implied covenant of good faith and fair dealing should be dismissed as well. The few cases that Pelham relies on in opposition to that, that's the Violene case, the Sheck case, and the Fotovest case, those simply don't apply. Those are implied covenant cases. They don't apply Florida law. And second of all, in each of those instances, the Court specifically found that there was no specific protected area or territory that was granted, which is vastly different from our case, which does have a protected territory and which the terms of the license agreement specifically allow for Choice to place a Wood Springs Suite in that territory. So those cases don't apply at all. And then lastly, the tortious interference claim, where they suggest that Sunshine breached the or, excuse me, tortiously interfered with the contract between Tee and Tee and Choice, that needs to be dismissed as a matter of law because, again, there's no breach of contract claim. To the extent that Appellant argues that it still has a tortious interference with business expectancy claim against Sunshine, that needs to be dismissed for at least three reasons. First, embedded within the elements of the tortious interference claim with business expectancy is that Tee and Tee needs to plead that Sunshine caused or induced a breach of its business relationships with its customers. And as part of that element, Tee and Tee also needs to plead that Sunshine intended to interfere with, between Tee and Tee's, between Tee and Tee and its business relationships with its customers. Nowhere is that allegation contained anywhere in the Third Amendment complaint. Second, the claim also fails because there's no allegation that Sunshine had knowledge of the alleged business relationship. They do say the loyal customers. They have the phrase, you know what I'm referring to, with loyal customers. Yes. Satisfied repeat customers, Your Honor. Yep. That's a term. And I'll get to that in a second. But I just want to point out that there's no allegation in the complaint that Sunshine had knowledge of these business relationships. But third, and Judge Benton, to your point, the claim also fails because they haven't identified any specific customers that, excuse me, although they allege that they have these satisfied repeat customers, there's no allegation and there's no identifiable understanding agreement that they were going to continue to have these relationships with these customers moving forward. And so it's speculative. That's the Ethan Allen case and the McKesson case. And it clearly is too speculative at this point because let's not forget that T&T no longer owns that hotel. Right? It sold it quite a while ago. So there aren't going to be any ongoing business relationships between T&T and those repeat satisfied customers because it sold the hotel and so those customers are no longer going to go to T&T's hotel. So from my perspective, that argument is completely moot. How can you know what the business relationships are and plead or argue or contend that those relationships are going to continue and that those satisfied repeat customers are going to go back to T&T's hotel when T&T sold the hotel and no longer operates it? So from that perspective, it's a moot argument and it should be dismissed on that basis. Okay. I see my time is up. Yes. Thank you. Thank you for your argument. Mr. Demarest, we'll hear rebuttal. Yes, Your Honor. I just want to point out a couple of things about the agreement because I think that the counsel for choice is inserting words into the agreement that aren't there. One very important thing to remember is when you look at the agreement, it says country, and there's a temptation to think that that means country inn and suites. But if you look at the definitions on the very first paragraph of the agreement, country is country inn and suites by Carlson, Inc., the franchisor. Now the franchisor is Choice Hotels International, Inc. So wherever in the agreement it says country, you need to substitute the word choice. And that significantly impacts, I think, how the agreement ought to be interpreted. Judge Colleton, with regard to your question about affiliates, affiliates is defined as an entity that's controlled or under common control with choice. So it goes to the argument that choice had the contractual right to put a hotel on the next lot if it owned it, but not a franchisee. And the hotel that was put on the next lot is a franchisee. There's been no argument that choice owns the hotel next door. They don't. So the section 1.2b3 does not help them. Well, they're relying on b2. I understand, Your Honor. b3 only comes up because it's referenced in c, which you were relying on. So I wanted to understand this argument. That is correct, Your Honor. I just wanted to make sure it was clear what affiliate meant. The last point I would say to end up here is if you look at the definition of system and marks, it talks about marks that are used to identify the system hotels. This hotel is no longer just a country inn and suites. It is a choice country inn and suites. It's part of the choice system. They have marketing materials that identify them as a choice hotel. The reservation system identifies them as a choice hotel. So I think that's another reason why once choice put its big arms around them, hugged them, and brought them into the system and included them on the reservation system, that this agreement applies and prevents any of those competing choice brands to be within the protected area without my client's consent. So my time is up unless the Court has questions for me. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the Court will file a decision in due course. Thank you, Your Honor.